UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | | Civil Action No. 05-CV-10883-WGY |
| LESLIE S. RAY INSURANCE , COMPANY, INC. and BEVERLY PORT MARINA, INC., Plaintiffs | * * * * * * | |
| vs. | * * | |
| ACADIA INSURANCE COMPANY, Defendant | * * * * | |
| * * * * * * * * * * * * * * * * * * * | | |

OPPOSITION OF BEVERLY PORT MARINA, INC.
and LESLIE S. RAY INSURANCE AGENCY, INC.'S,
TO ACADIA INSURANCE COMPANY'S MOTION TO DISMISS

The plaintiffs, Beverly Port Marina, Inc. ("BPM") and Leslie S. Ray Insurance Agency, Inc. ("LRIA"), hereby oppose the Motion to Dismiss by the defendant, Acadia Insurance Company ("Acadia"). The plaintiff's claims are neither untimely, nor are they barred by principles of res judicata, or otherwise. In further support hereof, the plaintiffs rely on the attached Memorandum, which is incorporated herein by reference.

        LESLIE RAY INSURANCE AGENCY, INC. and
        BEVERLY PORT MARINA, INC.,
        By their attorneys,

        /s/ William D. Chapman
        William D. Chapman, BBO# 551261
        Stephen D. Eldridge, BBO# 65185
        Melick, Porter & Shea, LLP
        28 State Street  Boston MA 02109
        (617) 523-6200

CERTIFICATE OF SERVICE: I hereby certify that the foregoing was served on counsel of record for Acadia Insurance Company, on this date: 5/19/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LESLIE S. RAY INSURANCE ,
COMPANY, INC. and
BEVERLY PORT MARINA, INC.,
  Plaintiffs

vs.

ACADIA INSURANCE COMPANY,
  Defendant

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Civil Action No.
05-CV-10883-WGY

MEMORANDUM IN SUPPORT OF BEVERLY PORT MARINA, INC.
and LESLIE S. RAY INSURANCE AGENCY, INC.'S,
<u>OPPOSITION TO ACADIA INSURANCE COMPANY'S MOTION TO DISMISS</u>

The plaintiffs, Beverly Port Marina, Inc. ("BPM") and Leslie S. Ray Insurance Agency, Inc. ("LRIA"), hereby oppose the Motion to Dismiss by the defendant, Acadia Insurance Company ("Acadia"). The plaintiff's claims are neither untimely, nor are they barred by principles of res judicata, or otherwise.

<u>Background</u>

The plaintiffs respectfully suggest that it is important for the court to review the following rather complicated procedural history which preceded this matter, insofar as Acadia's background recitation is rather one-sided and omits important matters.

On October 1, 2001, Carlos Johnson ("Johnson") became a paraplegic after the power boat he was operating hit rough water. When Johnson was injured, he was helping Beverly Port Marina, Inc. ("BPM") bring its boats back to Beverly from the Boston in-water boat show, and, the record suggests, was taking that particular boat for a test drive as a prospective purchaser.

On October 30, 2001, Johnson filed suit against BPM in Essex Superior Court, alleging, *inter alia*, that he was lawfully aboard and operating BPM's vessel as a potential purchaser and was injured as a result of the negligence and other actionable conduct of BPM.

BPM reported the liability claim to its insurer, Acadia. BPM sought a defense and indemnification in the Essex Superior Court action, pursuant to the terms of a liability insurance policy which BPM purchased from Acadia through LRIA. Acadia provided a defense to BPM, subject to a reservation of rights, and filed a declaratory judgment action in this Court on January 29, 2002. Specifically, Acadia sought a declaration that it did not owe a defense or indemnification to BPM relative to the Johnson claim. After little or no discovery, Acadia and BPM filed cross motions for summary judgment against each other on the very narrow coverage issue which had been pleaded up to that point. The motions were argued on November 21, 2002. After the summary judgment motions had been argued but before they were decided, Johnson filed a motion to assert third party claims against LRIA. Acadia opposed Johnson's motion, on several bases, including that the issues against LRIA, as the agent, could "complicate" the matter, and "are not even ripe for decision". LRIA opposed the motion, as well. In any event, this Court allowed Johnson's motion, and the claims against LRIA were allowed to proceed. Shortly thereafter, BPM asserted its own claims against LRIA.

Before LRIA filed its answer, this Court (Young, C.J.), ruled on July 25, 2003 that the Policy issued by Acadia to BPM did not entitle BPM to defense or indemnity against Johnson's claims. Thus, the Court decided the coverage issue before the insurer's agent had an opportunity to participate in that issue. Theoretically, at least, the agent's position and involvement could be significant. *See, e.g., Southeastern Insurance Agency, Inc. v. Lumbermens Mutual Insurance Company,* 38 Mass. App. Ct. 642 (1995) (insurance contract reformed based

on mutual intent of agent and insured). The summary judgment issue decided was narrow and did not address or pertain to the claims which BPM and LRIA now seek to raise against Acadia.

On August 26, 2003, Acadia filed a motion for final judgment under Rule 54(b). In its motion, Acadia acknowledged the new claims pending against LRIA. Acadia properly recognized that the there should be no interrelationship between the decided claims and the remaining claims, in order to prevent piecemeal appeals. However, never once did Acadia acknowledge the agency relationship between it and LRIA, the significance of that relationship, or the obvious potential for claims by LRIA against Acadia (once LRIA appeared in the case, which it had not yet at that time), or claims by other parties against Acadia based on the agency relationship with LRIA. BPM and LRIA respectfully suggest that *Acadia was incorrect* in asserting that the then-pending claims of Johnson against LRIA did not "relate" to Acadia, or that the new claims against LRIA did "not involve Acadia and will have no effect on Acadia"and therefore final judgment was appropriate. BPM opposed this motion. This court *denied* Acadia's motion, "until such time as the entire case can be resolved by a single judgment".

After this court's narrow ruling, the parties - *including Acadia*, notwithstanding the allowance of its summary judgment motion - engaged in significant discovery on the insurance issues raised in this matter. Without limitation, Acadia attended and participated in the lengthy depositions of various LRIA personnel, including David Ray, Candace Howard, and Maureen Kerans. This action arises from that discovery.

As that discovery was coming to a close, but before the mediation and ultimate settlement, LRIA served written notice upon Acadia, outlining the theories of liability against Acadia (notwithstanding the prior decision on the coverage issue), demanding indemnification

and defense against Acadia based on the Acadia-LRIA agency agreement, and requesting Acadia's attendance and participation at the then-upcoming mediation before Judge Mazzone. LRIA informed Acadia that " ... it would be appropriate for Acadia to seriously and substantively participate in the mediation.  Such participation *may* be a way for Acadia to resolve Utica's/Ray's claims against it.  On the other hand, Acadia's failure to participate in the mediation will surely result in claims being asserted against it." Acadia refused to attend or participate in the mediation.

The mediation then went forward before Judge Mazzone on February 17, 2004.  All parties attended and participated, except for Acadia.   At that time, the underlying paraplegia case was scheduled for trial in Essex Superior Court in March, 2004.  Johnson's counsel would not continue the trial of that matter.  All parties understood that, if the case was not settled by then, the case would go to trial.  For this reason of timing, it was not possible for BPM and LRIA to formally assert their claims against Acadia at that time - - although to be sure, Acadia had been specifically notified of the claims and that such claims would be forthcoming if it refused to participate in settlement.  The case did not settle at the mediation.  Discussions between all parties (except for Acadia) continued, however.  By the end of February, 2004, a settlement agreement had been reached in principle.  Given the complexities of the settlement, by early April, 2004, all material terms were formally agreed to, the settlement with Johnson was then reduced to writing, and settlement payments were made.  BPM paid $375,000 to Johnson.  LRIA also paid $375,000 to Johnson.  BPM and LRIA each bore their own legal fees and costs, which were significant.  (Between the loss payments and legal expenses, the amount now sought via the proposed claims against Acadia is in the $1,000,000 range.)   Johnson then dismissed his claims against BPM and LRIA in this Court, dismissed his Essex Superior Court action against BPM,

and BPM and Johnson dismissed the exoneration action before Judge Lindsay and appeal thereof to the First Circuit.  The remaining claims of LRIA and BPM against Acadia were specifically reserved and preserved for further action.  LRIA provided further notice to Acadia's counsel in March of 2004 of its intent to proceed with claims against Acadia.

LRIA and BPM then proceeded to negotiate the issues between them, and by late September of 2004, agreement had been reached as to proceeding against Acadia.  Thereafter, BPM and LRIA filed a Joint Motion to Amend Pleadings so as to assert claims against Acadia on February 8, 2005.  Acadia opposed the motion and filed a Motion to Dismiss.  The Court held a hearing on March 23, 2005.  At the hearing, this Court (Young, C.J.) denied the Joint Motion to Amend and, "instructed [counsel for BPM and LRIA] that he can file a new action either in Federal or State Court on the contribution claims."  (See, court docket).  On such basis, the Court also entered final judgment in favor of Acadia.

As a result of that order, BPM and LRIA then immediately filed a new complaint against Acadia, on March 24, 2005.  The defendants now seek to recover their significant loss and legal payments from Acadia, by virtue of these proposed new claims.  Allowing these claims to proceed will (a) foster the full adjudication of the rights of the parties, (b) prevent Acadia from avoiding its liability for the Johnson claim and thereby reaping a significant unjust windfall, (c) result in no unfair prejudice to Acadia, insofar as Acadia was afforded notice on multiple occasions both before and after the underlying settlement was reached, and (d) prevent severe injustice to Beverly Port and Leslie Ray.

The complaint filed by BPM and LRIA in this action asserts claims against Acadia in negligence, misrepresentation, breach of contract/third party beneficiary contract, breach of the covenant of good faith and fair dealing, and Chapter 93A.  LRIA also proposes to assert claims

against Acadia for contractual indemnification, pursuant to the agency agreement between LRIA and Acadia which was in effect at all relevant times leading up to and after Johnson's underlying accident. As set forth in greater detail below, these claims address wholly distinct factual circumstances and legal theories than those previously litigated.

    *(A)*    <u>Applicable Standard</u>

Federal law provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 16 (1st Cir. 2003). In order to preclude the claims of BPM and LRIA, Acadia must demonstrate "(1) a final judgment on the merits (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Id*.
In ruling on a motion to dismiss, the Court should consider the "vitality of the claim as a whole." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004). Dismissal is proper only where the factual averments contained in the complaint hold out no hope of recovery on any theory of recovery. *Id*. The Court's function in deciding a motion to dismiss is not to determine the merits of the claims but rather whether the plaintiff is entitled to discovery in furtherance of the claim. *Id*.

    *(B)*    <u>Res judicata is inapplicable to the claims asserted by LRIA and BPM</u>

Acadia cannot satisfy the elements of a res judicata argument. The second element in particular (identicality of causes of action), does not apply because the causes of action now asserted by LRIA and BPM are wholly dissimilar from those brought in the prior action. The third element is also lacking (identicality of parties), since Acadia and LRIA were never effectively parties to action at the same time; Acadia was let out of the case before LRIA (its

own agent) began to participate substantively. Further, BPM and LRIA also dispute the applicability of the first element (final judgment on the merits), since based on the timing and history set forth above, it cannot be reasonably argued that the final judgment constitutes a judgment on the merits of all claims which *"could have been raised"* in the prior action. As noted herein, neither BPM nor LRIA had a viable opportunity to present claims which were *"previously available to them"* against Acadia in the prior action. For example, it was not until that very brief window between Acadia's summary judgment and the underlying state court trial date that LRIA and BPM had the advantage of obtaining Acadia's underwriting files, and explored the "causation/other available coverage" facts in discovery, both of which form a significant basis of the instant claims.

The plaintiffs suggest that this court has already recognized the potential viability of separate, independent claims against Acadia, unrelated to the narrow coverage issue, when Judge Young denied Acadia's motion for separate and final judgment in September, 2003. This court refused to enter relief for Acadia "until such time as the entire case can be resolved by a single judgment". After that order, the parties - *including Acadia*, notwithstanding the allowance of its summary judgment motion - engaged in significant discovery on the insurance issues which form the basis of the instant claims. The proposed instant claims were immediately tendered to Acadia. Acadia refused to acknowledge them. In any event, in entering the final judgment for Acadia on the coverage issue, Judge Young specifically recognized that additional claims "off the policy" would be forthcoming against Acadia, and the docket was specifically noted accordingly. The final judgment as entered was *specifically not* a disposition on the merits of the proposed amended claims, or of the then-pending motion to amend. Acadia's argument that the prior final judgment is dispositive of all claims is therefore contrary to the thrust and perhaps

the specific intent behind this court's own orders in the prior case.

The previous action initiated by Acadia sought a declaration that it was not obligated to defend or indemnify BPM against the claims of Johnson pursuant to the policy it issued to BPM. That was the sole issue decided on summary judgment, and is therefore the sole issue underlying the final judgment. However, as Acadia must acknowledge, the case changed its complexion drastically, both in terms of the scope of the issues, as well as the parties, shortly *after* Acadia's summary judgment motion was allowed.

The bottom line is this: based on the way the three related cases unfolded between September 2003 and March 2004 (approximately six months), neither BPM nor LRIA had a viable opportunity to obtain relief from Acadia (notwithstanding efforts to do so), and they should not now suffer because Acadia refused to participate under the guise that its summary judgment victory (on the narrow coverage issue) was dispositive of the other viable, independent theories of liability which were shortly thereafter discovered and which were then almost immediately raised against it.

Insofar as Acadia obtained summary judgment before its own agent, LRIA, began to participate in the case, there were never any claims asserted between LRIA and Acadia during the referenced brief window of time. Obviously, this Court's entry of final judgment was not an adjudication any claims between LRIA and Acadia.

The First Circuit recognizes that "separate and distinct wrongs resting on different factual bases" need not be adjudicated in the same action. *Landrigan v. City of Warwick*, 628 F.2d 736, 741 (1st Cir. 1980) (holding that a prior civil action for assault and battery did not preclude a subsequent §1983 action alleging a conspiracy to cover up the alleged assault and battery).

Similarly, the claims of LRIA and BPM do not seek to revisit issues raised by Acadia's declaratory judgment action, nor the counterclaims asserted by Johnson and BPM against Acadia. Nothing contained in the instant complaint seeks adjudication of Acadia's obligations under the subject insurance policy itself. Rather, the complaint seeks, in short, the adjudication of Acadia's duty of care to LRIA and BPM with respect to the underwriting of insurance policies as well as LRIA's rights under the Agency Agreement.

While no reported First Circuit case directly addresses the issue presented here, caselaw from other jurisdictions supports denial of Acadia's motion to dismiss. For example, the case of *Robinson v. MFA Mut. Ins. Co.*, 629 F.2d 497 (8th Cir. 1980) addressed claims for deceit, emotional distress and bad faith against an insurance company following an adjudication of the insured's rights under the policy. The plaintiff in *Robinson* initially sought recovery under the uninsured motorist provision of her automobile insurance policy after suffering injuries in a "hit and run" accident. *Id*. at 498. To recover under the uninsured motorist provision, the plaintiff had to prove physical contact between her vehicle and the hit and run vehicle. Her insurer denied coverage on the grounds that "the State Police said there was no physical contact between the insured vehicle and allegedly unknown vehicle." Thereafter, the plaintiff filed suit under the uninsured motorist provision of the policy and obtained a judgment against the insurer. Evidence adduced at trial revealed that the insurer's claim regarding the state police report was not true. *Id*. After collecting the judgment, the plaintiff then filed suit based on the alleged misconduct of the insurer in its investigation and refusal to settle the claim. *Id*. at 499. In allowing the plaintiff to proceed, the court reasoned that the subsequent litigation would "require proof substantially different from that presented in [plaintiff's] suit for the policy proceeds." *Id*. at 502.

The case of *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369 (D. Del. 2003) addressed similar claims of misconduct against an insurance company. In that case, a court ruled in a prior action that a policy exclusion relieved the insurer of liability under the policy. *Id*. at 372. In the subsequent action, the policyholders sued the insurer alleging common law fraud, statutory fraud and unjust enrichment. *Id*. In allowing the subsequent action to proceed, the court found the causes of action sufficiently distinct in that "[t]he essence of the [second action] . . . is entirely different because it is based upon allegations that [the insurer] defrauded [the policyholders] and was unjustly enriched . . ." *Id*. at 375. The court concluded its analysis on this point by noting that the acts complained of, the theories of recovery, and the evidence required were different between the two actions - precluding application of the res judicata doctrine.

This case is quite similar to the *Household Int'l* case. In the instant case, the proof required for the plaintiffs to succeed on the merits of their claim against Acadia concerns Acadia's unjust enrichment by refusing participation in the Johnson claim resolution, Acadia's lack of due care in underwriting of the Policy and its obligations to LRIA under the Agency Agreement. None of these issues were previously before the Court in the prior action. Rather, Acadia's liability is rooted in its superior role (as compared to LRIA and BPM) as the underwriter of marine insurance policies, its misleading of its own agent and its insured as to the scope of coverage available through it and throughout the marine insurance industry, its direct knowledge (through underwriting inspections) of BPM's operations, and its direct knowledge of liability exposures to individuals such as Carlos Johnson who are operating BPM boats, whether during test drives as potential purchasers or otherwise.

The counterclaims pled by BPM against Acadia in the prior action do not preclude

litigation of its claims set forth in the instant action. The counterclaims previously asserted by BPM against Acadia through different counsel are fairly read as merely addressing BPM's rights under the Policy. While entitled as claims for "Breach of Contract" and "Violation of Chapters 93A and 176D", the essence of these claims was limited to the narrow coverage issue and did not assert the distinct common law claims now pending before this Court..

(C)     *The claims set forth by BPM and LRIA are meritorious*

The claims of both BPM and LRIA are meritorious, and deserve to be tested on their merits. The claims of both parties against Acadia assert, in essence, that for factual and legal reasons "off the policy", Acadia is liable for the loss payments and legal expenses of LRIA and BPM which they sustained in the wake of Acadia's refusal to participate in the Johnson settlement.

LRIA's Rule 30(b)(6) witness testified at his deposition in the prior action (which was attended by Acadia) that based on what he was told by Acadia, he believed that coverage for a claim like Johnson's was "unavailable". After the loss, Acadia drafted two affidavits which it asked LRIA to sign, in which Acadia asserted that such coverage was "unavailable". Acadia also took the position, in arguing for summary judgment before this Court, that the "generally followed underwriting rule in the industry" is that protection and indemnity coverage only extends to the operation of boat dealer's vessels by its employees.

The Acadia underwriting file, which was produced by Acadia *only after the allowance of summary judgment*, clearly reflected that Acadia understood and appreciated BPM's operations, at least as much and apparently more than LRIA did. Before the loss, Acadia knew that BPM's annual boat dealer sales were in the $2,000,000 range - and thus clearly knew or should have known that there was a substantial "test drive" liability exposure arising from operation of BPM

boats in the water by third parties.  Acadia conducted a Loss Control Survey, through its underwriters Molly Welsh and Grettyl Lewit, which involved among other tasks a direct interview of Frank Kinzie, the president of BPM, and a survey of the BPM facilities.  Acadia specifically recognized that BPM was engaged in the business of boat sales, and that in this regard it would transport its boats by water to boat shows in Boston.  In June of 2001, Acadia's marine underwriter Kristine McLaughlin asked Acadia's auditors to "please be sure that the account is classified correctly and is not missing any classifications".  She further stated "I just want to be sure that we are picking up all of the correct exposures".  Despite these facts, neither the initial Loss Control Survey Report, dated May 10, 2000, nor any other underwriting material addressed BPM's exposures relative to test drives or third parties' operation of its boats.  Contrary to Acadia's apparent understanding and position on the issue, however, in reality the liability risk associated with third party operation of the insured's boats, and/or test drives, is one which is specifically understood in the marine insurance underwriting industry.  For example, the *Best's Underwriting Guide* underwriting classification for "Boat Dealers" provides, in part, that:

> Boats are displayed in boat houses, showrooms or open yards and at docks.  In-water demonstrations may be provided. ...  Displays at boat shows and conventions are a regular part of some dealers' operations.
>
> The hazards common to any retail operation are present.   Additional exposures in some cases are doing business at water's edge and, when demonstrating boats or equipment, taking the customer on water.
>
> Although the basic policy normally excludes coverage for demonstration of watercraft, this coverage can be added.  If it is, *the underwriter should know* whether boats are demonstrated or tested on or away from the premises and whether an employee experienced in boat control and water safety is present.  ....   Tests and demonstrations present a hazardous potential: ... an individual may fall within the boat or may fall overboard.   All of these possibilities *must be considered*; and it is important to remember that admiralty law differs from ordinary law.

>Does the dealer sponsor races?  Does the firm participate in boat shows or conventions?  The extent of these exposures *should be determined*.   (Emphasis added).

At no time during the two policy periods leading up to Mr. Johnson's accident did Acadia address these underwriting issues in any way.  Acadia owed a duty, to both LRIA and to BPM, to exercise reasonable care in its underwriting of the risk.  Acadia breached its duty by not addressing the underwriting issues which generally accepted authorities, such as *Best's Underwriting Guide*, indicate should be addressed by the insurer in the performance of its underwriting function.  If Acadia had performed its duty, LRIA would have in turn been able to address the insurance options and issues with BPM, and thereby would have avoided the claims and losses sustained by it and BPM.   Instead,  as a direct consequence of Acadia's breaches, LRIA became exposed to Johnson and BPM, and LRIA and BPM each were forced to pay significant sums of money, all of which should have been covered by insurance.

BPM and LRIA thus claim, in part,  that Acadia misrepresented the benefits to BPM and LRIA of switching the marina liability coverages to Acadia from the prior insurer, as well as the availability of insurance coverage for exposures which Acadia knew BPM had with regard to non-employee operation of its boats.   Acadia, as the underwriter of marine insurance policies, and as an insurer which received greater underwriting information from BPM than LRIA did with regard to BPM's boat dealer operations, was certainly in the better position, (as compared to LRIA), to determine appropriate classifications, understand the scope of available coverages, and then communicate to the insured which coverages it would provide and which it would not.  If LRIA failed to obtain coverage for BPM which was "necessary and available" to cover the losses in the underlying matter, then BPM and LRIA contend that that failure was attributable solely to (a) Acadia's misrepresentations of the benefits associated with its marine coverages, (b) Acadia's misrepresentations as to the availability of coverages in the marine insurance industry,

(c) Acadia's failure to properly and reasonably underwrite the risk, (d) Acadia's failure to fulfill the duties owed to LRIA under the LRIA-Acadia agency agreement, (e) Acadia's failure to properly inform LRIA of the coverages which it would provide and would not provide, so that LRIA could inform BPM, (f) Acadia's failure to properly inform LRIA of the availability of coverage in the industry, so that LRIA could inform BPM.

The Acadia-LRIA Agency Agreement, dated December 23, 1997, requires that Acadia "shall defend and indemnify the Agent (LRIA) against liability, including reasonable cost of defense and settlements, imposed on it by law for damages caused by acts or omissions of the Company, provided that the Agent has not caused or contributed to such liability by its own acts or omissions". LRIA was sued for not offering or obtaining "necessary and available" coverage for BPM. If LRIA did not offer or obtain such coverage, the sole cause of that was Acadia's failure to properly perform its underwriting function. The claims which LRIA had to defend in the foregoing portion of this case were precisely the sort contemplated by the indemnification provision of the Agency Agreement.

In summary, LRIA serves the needs of its customers by arranging for insurance companies to provide the coverages the customer requests. LRIA operates as an agent for Acadia pursuant to a written Agency Agreement. The Agreement requires that Acadia prepare all insurance policies and to indemnify LRIA against liability caused by the acts or omissions of Acadia. In this case, Acadia's failure to either provide BPM with the necessary coverages or advise them that they would not insure certain known risks resulted in BPM and LRIA becoming liable for a serious injury to a third-party. These coverages were customarily provided by other insurers writing Marina Owners Legal Liability and Boat Dealers insurance policies in Massachusetts in 2001. Acadia should have known that the existence of such coverage was

significant, both to LRIA and BPM.

Both BPM and LRIA have viable, meritorious claims against Acadia, which ought to be allowed to proceed and tested on their merits. *Foman,* supra; See *John Beaudette, Inc. v. Sentry Ins. Co.,* 94 F. Supp. 2d 77 (D.Mass.,1999); *International Mobiles Corporation v. Corroon & Black/Fairfield & Ellis, Inc.,* 29 Mass.App.Ct. 215 (1990); *Medical Professional Mutual Insurance Company v. Breon Laboratories, Inc.,* 966 F.Supp. 120 (D.Mass.1997); *Hartford Casualty Insurance Company v. New Hampshire Insurance Company*, 417 Mass. 115 (1994); *First State Insurance Company v. Utica Mutual Insurance Company*, 870 F.Supp. 1168, 1175 (D.Mass.1994), *aff'd,* 78 F.3d 577 (1st Cir.1996).

    *(D)*    <u>*There is no statute of limitations issue*</u>

Acadia also half-heartedly asserts that BPM's tort claims are precluded by the three year tort statute of limitations. Had the court allowed these claims to proceed as BPM had originally intended (i.e., by amendments to the prior action before this court), BPM's tort claims would have related back to the original filing date (in 2001) and there would obviously have been no statute of limitations issue. *See,* Fed. Rul Civ. P. 15 ( c ). Having declined to have the new claims proceed in that form, this court (Young, C.J.) specifically ordered that BPM and LRIA could proceed "with a new action either in Federal or State Court on the contribution claims." Having commenced the instant action "within one year after payment", the claims of BPM against Acadia are unquestionably timely-filed. *See,* G.L.c. 231B §3(d).

        LESLIE RAY INSURANCE AGENCY, INC. and
        BEVERLY PORT MARINA, INC.,
        By their attorneys,

        /s/ William D. Chapman
        William D. Chapman, BBO# 551261
        Stephen D. Eldridge, BBO# 65185
        Melick, Porter & Shea, LLP
        28 State Street
        Boston MA 02109
        (617) 523-6200

CERTIFICATE OF SERVICE: I hereby certify that the foregoing was served on counsel of record for Acadia Insurance Company, on this date: 5/19/05

G:\BillC\JOHNSON v. BPM v. LRIA\OPP to Acadia MO to Dismiss 5-18-05.wpd