# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEVERLY PORT MARINA, INC. <br> and LESLIE S. RAY INSURANCE <br> AGENCY, INC., <br><br> Plaintiffs <br><br> vs. <br><br> ACADIA INSURANCE COMPANY, <br><br> Defendant | Civil Action No. 1:05-cv-10883-WGY |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ACADIA INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, Acadia Insurance Company, by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and pursuant to Rule 56, F.R. Civ. P., and Rule 7.1(B), Local Rules of the United States District Court for the District of Massachusetts, submits the following Memorandum of Law in support of its Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

As set forth more fully in Defendant's Statement of Material Facts, the relevant facts as to which there is no genuine dispute are as follows:

Frank and Suzanne Kinzie, the owners of Beverly Port Marina, Inc. ("Beverly Port"), have been customers of Leslie S. Ray Insurance Agency, Inc. ("Leslie Ray") since the 1980's. The Kinzies and Beverly Port have obtained virtually all of their insurance coverages through Leslie Ray. In November of 1996, the Kinzies purchased the Beverly Port Marina. Leslie Ray procured insurance coverage for Beverly Port from Commercial Union

Insurance Company for the policy period November 22, 1996 to May 22, 1997.  Leslie Ray subsequently procured insurance coverage for Beverly Port from Hanover Insurance Company for the policy period May 22, 1997 to May 22, 1998.  Leslie Ray procured renewals of the Hanover policy for Beverly Port for the policy periods May 22, 1998 to May 22, 1999, and May 22, 1999 to May 22, 2000.  The terms of coverage did not change when the Hanover policy was renewed.

In addition to obtaining insurance for Beverly Port, Leslie Ray had been procuring insurance for two marinas, Danversport Yacht Club and Pike Marine (which also sells boats) for many years.

In December of 1997, Leslie Ray entered into an agency agreement with Acadia.  The only provision in the agreement relating either to indemnification or Acadia's liability to Leslie Ray states:

> The Company shall defend and indemnify the Agent against liability, including reasonable cost of defense and settlements, imposed on it by law for damages caused by acts or omissions of the Company, provided the Agent has not caused or contributed to such liability by its own acts or omissions.

The Agency Agreement does not state that Acadia has a duty to explain the scope or meaning of the terms of any coverage to Leslie Ray.  It is not and has not been Acadia's practice to explain the scope or meaning of the terms of Acadia's coverage to its agents or to advise them on the advantages or disadvantages of Acadia's insurance.

In May 2000, Leslie Ray submitted a Yacht Dealer/Marina Operators Application for Insurance to Matthew Pedersen, then director of Acadia's ocean marine underwriting department.  The application states, in response to the question, "Number of persons who will operate watercraft and their experience":  "3 – good experience."  Based on that

application, Mr. Pedersen provided Leslie Ray with a quotation for insurance coverage.

Leslie Ray prepared a comparison chart of the Hanover and Acadia coverages for Beverly Port. Beverly Port and Leslie Ray decided to switch insurance coverage from Hanover to Acadia, and consequently, Acadia issued its marina operator's legal liability/boat dealers policy (among other policies) to Beverly Port for the policy period May 22, 2000 to May 22, 2001. Leslie Ray received a copy of the Acadia policy and reviewed it. A copy of the Acadia policy was provided to Beverly Port.

The Acadia coverage for marina operators/boat dealers was equal to or broader than the Hanover and Commercial Union coverages. The Acadia policy was renewed for the period May 22, 2001 to May 22, 2002. The renewal policy did not change the terms of coverage.

In the fall of 2001, a Beverly Port customer named Carlos Johnson asked Beverly Port if he could help drive one of Beverly Port's boats back to the marina from a boat show in Boston. On October 1, 2001, Beverly Port allowed Mr. Johnson to operate one of its boats from the Boston boat show to Beverly, MA, during which trip he was injured. On or about October 30, 2001, Johnson filed suit against Beverly Port in the Superior Court, Essex County, Massachusetts, alleging that he sustained injuries in the course of operating Beverly Port's boat.

On or about January 29, 2002, Acadia filed a complaint in this Court seeking a declaration that there was no coverage for the Johnson claim ("DJ Action"). Beverly Port asserted counterclaims against Acadia in the DJ Action. In connection with its counterclaims and its defense of the DJ Action, Beverly Port argued that Acadia should be deemed to have

provided coverage for the Johnson claim because Beverly Port allegedly told Leslie Ray before May 2000 that Beverly Port allowed its customers to "test drive" its boats.

In the middle of the DJ Action, Carlos Johnson added Leslie Ray as a party to the DJ Action. The claims against Leslie Ray were based on allegations that Leslie Ray (a) misrepresented its expertise, (b) negligently failed to obtain adequate insurance for Beverly Port, and (c) negligently failed to inform Beverly Port about lack of coverage for certain types of claims.

On or about July 25, 2003, this Court granted summary judgment on all claims between Acadia and Beverly Port, and subsequently entered final judgment in favor of Acadia on March 23, 2005.

The Acadia policy unambiguously limited protection and indemnity coverage to liability with respect to vessels owned by Beverly Port and operated "by the Insured or by authorized employees of the Insured." The Acadia policy did not provide coverage for the Johnson claim. The Hanover policies issued to Beverly Port, and in effect from May 1997 through May 2000, similarly limited P & I coverage to vessels operated "by the insured or his employees." The Hanover policy would not have covered the Johnson claim. The Commercial Union policy issued to Beverly Port similarly limited P & I coverage to vessels "operated by the insured or a competent employee." The Commercial Union policy would not have covered the Johnson claim.

Frank Kinzie read at least the Commercial Union policy when Beverly Port first obtained insurance. Mr. Kinzie is a management consultant for large corporations and holds a law degree from Harvard Law School, as well as both an MBA and a bachelors degree from Harvard and a master's degree from a European university.

4

Before the Johnson claim arose, Beverly Port never asked Leslie Ray for insurance coverage for liability exposure arising out of customer "test drives." Though Leslie Ray (through its Executive Vice President, David Ray) says that it had discussions with Matthew Pedersen in the Spring of 2000 regarding the P & I coverage part in Acadia's policy and "most likely" had a conversation with him to the effect that the limitations on the insuring agreement for Acadia's P & I coverage were similar to those in Hanover's P & I coverage, Leslie Ray never raised any questions with Mr. Pedersen that the P & I Coverage was not broad enough for Beverly Port's operations. At no time before the Johnson claim arose was Acadia ever informed that Beverly Port let customers operate its vessels or was ever asked to provide liability coverage for such a practice.

Matthew Pedersen, who has had extensive experience in marina underwriting, is not familiar with any insurance companies that provide liability coverage for customers operating the insured's vessels. Mr. Pedersen's understanding (based not only on his underwriting experience, but also on his experience in purchasing many boats from dealers) was that boat dealers do not allow customer "test drives."

The 2001-2002 renewal of the Acadia policy was issued by Theodore Wirth, who replaced Mr. Pedersen as Acadia's director of ocean marine underwriting. Mr. Wirth, who has extensive experience dealing with marina insurance issued by a variety of insurance companies, all of which used similar wording to limit coverage, was not aware of any insurers that cover liability arising from customers operating insured's vessels. Mr. Wirth (based on his experience not only in the marine insurance field, but also as the buyer of many boats from dealers) also was not aware of any boat dealers allowing "customer test drives."

5

The condition that a boat be operated by either the insured or its employee has always been a prerequisite to P & I coverage in Acadia's marina operators/boat dealers policy. No insurance agent had ever raised a question concerning liability exposure for boat dealers arising out of "test drives." Because Acadia was not aware of boat dealers in general, or of Beverly Port in particular, allowing customer "test drives," Acadia had no reason to recognize a potential for liability exposure in allowing customer "test drives." Acadia never gave Leslie Ray false information.

After Acadia advised that there was no coverage for the Johnson claim, Beverly Port asked Leslie Ray for the first time to procure coverage for customer "test drives." In November 2001, Leslie Ray asked if Acadia could provide such coverage. Acadia refused. At the same time, Leslie Ray asked Hanover for such coverage. Hanover responded that it did not offer such coverage because the exposure was "too difficult to control," adding that it did "not believe that any standard market will offer this coverage." At the same time, Leslie Ray asked Commercial Union/One Beacon/ International Marine Underwriters for such coverage. Commercial Union/One Beacon/International Marine Underwriters responded that it would not consider writing such coverage. Additionally, Leslie Ray contacted a Florida insurance agency that specialized in marine coverage and still was unable to procure such coverage. After investigating the issue "fairly extensively," Leslie Ray found that coverage for customer "test drives" was not available.

On or about March 24, 2005, Beverly Port and Leslie Ray filed a 13-count complaint against Acadia in this action. Acadia timely filed a Motion to Dismiss all claims. In response to Acadia's Motion, the Court dismissed ten of the thirteen counts for failure to state a cognizable claim. The Motion to Dismiss was denied only as to Counts III

(negligence as to Beverly Port), VIII (breach of contract with Leslie Ray), and IX (negligence as to Leslie Ray). Subsequently, because Plaintiffs failed to comply with the Case Management Scheduling Order, the Court granted Acadia's motion to exclude expert testimony offered on behalf of Plaintiffs.

## ARGUMENT

### 1. Introduction

All of Plaintiffs' claims are predicated on the notion that Acadia somehow owed duties (1) to diligently inquire into the operations of the insured with respect to boat dealer coverage; (2) to educate the insurance agent concerning the details of boat dealer coverage; (3) to disclose "gaps" in coverage that could potentially affect the insured; and (4) to write its policies so as to eliminate "gaps" in liability coverage. However, because no such duties were imposed on Acadia either by law or under the Agency Agreement with Leslie Ray, Plaintiffs' claims must fail. Moreover, even if there were such duties, Plaintiffs cannot demonstrate a breach of duty (that is, a failure to use due care or good faith), particularly in the absence of expert testimony.

### 2. As a matter of law, Acadia is not liable for breach of the Agency Agreement.

Leslie Ray claims that Acadia breached their Agency Agreement; but nothing in that Agreement expressly or impliedly imposes on Acadia any of the duties asserted by Leslie Ray. For example, Leslie Ray cites the provision that Acadia "will be responsible for all policies, endorsements, renewals, and collection of all direct bill premiums." It should be noted that this provision appears under the "Direct Bill" section of the Agreement and simply allocates the task of preparing policies to Acadia. If the party responsible for preparing the

7

policies has any duty of inquiry or disclosure, such a duty is not to be found in the Agency Agreement.

Leslie Ray further relies on the Agency Agreement's indemnification provision, which states that Acadia "shall defend and indemnify [Leslie Ray] against liability, including reasonable cost of defense and settlements, imposed on it by law for damages caused by acts or omissions of [Acadia], provided [LRIA] has not caused or contributed to such liability by its own acts or omissions." Thus, the conditions for indemnification are that (a) the liability was caused by Acadia's fault, and (b) the liability was not caused by any fault of Leslie Ray.

Acadia has found only two cases in which courts have construed indemnification clauses similar to the above-quoted language. In *Art Goebel, Inc. v. North Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997), the agency agreement between the insurer, West Bend, and the agent, Cleary, contained the following clause, entitled "Indemnification":

> [Insurer] will defend and indemnify [agent] against liability, including the cost of defense and settlements, imposed upon him by law ... for damages sustained by policyholders and caused by acts or omissions [insurer] provided [agent] has not caused or contributed to such liability by his own acts or omissions.

The court held:

> The indemnity clause in West Bend's agency agreement with Cleary unambiguously provides that West Bend will indemnify Cleary if all three of the following conditions are satisfied, (1) a policyholder sustained damages; (2) the damages were caused by acts or omissions of West Bend, and (3) Cleary did not cause or contribute to the damages by its own acts or omissions.

*Id.* The court further held that based on the plain and ordinary language of the indemnity clause, the agent had no right to indemnity, because there was no evidence that the policyholder sustained damages because of any acts or omissions of the insurer. *Id.*

8

Similarly, in *Gulf Insurance Co. v. Burns Motors, Inc.*, 22 S.W.3d 417 (TX 2000), an agency agreement between Gulf Insurance Company/Select Insurance Company and Leroy Nash contained the following clause, entitled "Indemnification by Company":

> Company shall indemnify and hold harmless Agent against any claims or liabilities Agent may become obligated to pay to or on behalf of any insured based on actual or alleged error company in its processing or handling Direct Billed or any other business placed by Agent with company, except to the extent Agent has caused, contributed to or compounded such error.

*Id.* at 420.  The agent, Nash, entered into a consent judgment with the insured, stating that the insured purchased insurance from Gulf and Select based on Nash's advice and recommendations and that Nash "did knowingly make such representations based upon the initial erroneous advice of said insurance companies and while acting as an agent in law for such companies."  *Id.* at 421.  The Texas Supreme Court held as a matter of law that because the agent knowingly made misrepresentations, he "caused, contributed to or compounded" the error, thereby precluding indemnification.  *Id.* at 423.   The court rejected the argument that if the agent had merely passed on the insurer's misrepresentations, he could obtain indemnification.  *Id.*

Hence, Leslie Ray must prove both that its liability resulted from wrongful acts or omissions of Acadia and that Leslie Ray's own acts or omissions did not cause or contribute to such liability.  Leslie Ray cannot prove the latter, because the underlying claims against Leslie Ray were premised entirely on allegations concerning Leslie Ray's own acts and omissions.  Leslie Ray's position seems to be that whatever mistakes it made in procuring coverage for Beverly Port merely mirrored the same mistakes made by Acadia, which had "superior knowledge" of boat dealers coverage; yet there are two flaws in Leslie Ray's assumption.  First, there is nothing in the terms of the indemnification provision that allows

9

for concepts of greater or lesser fault based on degree of knowledge.  If Leslie Ray's acts or omissions contributed in any way to its liability, then it does not matter whether any acts or omissions of Acadia contributed to a greater degree.

Second, it is well established that an insurance agent (unlike the underwriter) owes a duty of care to the insured in procuring appropriate coverage.  *See, e.g. Campione v. Wilson*, 422 Mass. 185, 189, 661 N.E.2d 658, 661 (1996); *Couillard v. Pick*, 397 Mass. 756, 493 N.E.2d 865 (1986); *Flattery v. Gregory*, 397 Mass. 143, 489 N.E.2d 1257 (1986); *Rae v. Air-Speed, Inc.*, 386 Mass. 187, 435 N.E.2d 628 (1982).  An insurance broker "owes a greater duty to an insured than does an insurance company."  *Campione*, 422 Mass. at 195; *Riley v. Commercial Insurance Agency*, 1999 Mass. App. Div. 243.  This is because the insurance agency, unlike the insurance carrier, has specifically undertaken to advise the insured in selecting appropriate coverage.

Furthermore, Leslie Ray contends that its liability was caused not by an act of Acadia, but only an omission.  To show that its liability was caused by an omission, Leslie Ray must show that Acadia had a duty to act in the first place.  Thus, Leslie Ray's breach of contract claim is entirely dependent on its negligence claim.  If Acadia had no legal duty to act, then it cannot be said that an omission by Acadia caused Leslie Ray's liability.  Acadia had no legal duty to act, as demonstrated below.

### 3. **As a matter of law, Acadia was not negligent.**

To recover for negligence, a plaintiff must show "the existence of an act or omission in violation of a ... duty owed to the plaintiffs by the defendant."  *Cottam v. CVS Pharmacy*, 436 Mass. 316, 320, 764 N.E.2d 814, 819 (2002); *Dinsky v. Framingham*, 386 Mass. 801,

10

804, 438 N.E.2d 51 (1982). The existence of a duty is a question of law to be resolved by the judge. *Id.*; *Davis v. Westward Group*, 420 Mass. 739, 743, 652 N.E.2d 567 (1995).[1]

Neither Massachusetts' courts, nor any other courts have recognized a duty on the part of an insurer to educate either the insured or the insurance agent with respect to coverage. The Massachusetts Supreme Judicial Court has held: "The only duty that the law imposes on an insurance company to protect its insured is that the company take reasonable steps to determine whether the insured has consented to the policy or the change of beneficiary." *Bacon v. Federal Kemper Life Assurance Co.*, 400 Mass. 850, 855, 512 N.E.2d 941 (1987). In *Bacon*, the plaintiff argued that because the insurer was contractually bound "to process and accept a change of beneficiary submitted in conformity with the policy," it had a duty to do so with reasonable skill and care. *See id.* at 858 (O'Connor, J., concurring). The court did not agree.

One of the leading authorities on insurance law acknowledges: "As yet, one cannot assert that insurers and their agents have an affirmative, general duty to explain the material insurance coverage terms and limitations to their applicants for insurance." 1 *Holmes's Appleman on Insurance 2d* §4.2 at 401 (1996). Although an insurance *agent* owes an applicant a duty of reasonable care, including an obligation to explain to applicants the types

---

[1] Illustratively, Massachusetts courts have held that a pregnant woman does not owe a legal duty of care to her unborn child to refrain from negligent conduct that may result in physical harm to that child, *Remy v. MacDonald*, 440 Mass. 675, 801 N.E.2d 260 (2004); that a pharmacy generally has no duty to warn its customers of the side effects or risks of the drugs it dispenses, *Cottam*, 436 Mass. at 320-21; that a social host owes no duty of reasonable care to protect guests from fireworks set by a third party, *Luoni v. Berube*, 431 Mass. 729, 731, 729 N.E.2d 1108 (2000); that a social host who has not provided liquor owes no duty of reasonable care to protect travelers on the highway from an intoxicated guest, *Cremins v. Clancy*, 415 Mass. 289, 292, 612 N.E.2d 1183 (1993); that a parent does not owe a duty to protect guests at a "young person's" party, *Wallace v. Wilson*, 411 Mass. 8, 12, 575 N.E.2d 1134 (1991); that a landowner owes no duty of reasonable care to an adult trespasser, *Schofield v. Merrill*, 386 Mass. 244, 245, 435 N.E.2d 339 (1982); that the owner of premises does not owe a duty to stop patrons from consuming alcoholic beverages on the premises, *Yakubowicz v. Paramount Pictures*, 404 Mass. 624, 632-33, 536 N.E.2d 1067 (1988); and that consenting adults have no duty of reasonable care to each other in the course of sexual relations, *Doe v. Moe*, 63 Mass. App. Ct. 516, 827 N.E.2d 240 (2005).

11

of available coverages and to assist them in making an appropriate selection, "The mere giving of improper or inaccurate advice on insurance needs will not subject the *insurer* to liability where the advice is given by the insurer directly or by its agent." *Id.* at 402 (emphasis supplied). Furthermore, "the insurer is only required to issue the coverage ordered by the insured regardless of the insured's objective expectations as to the actual extent of coverage to be provided by the policy form." *Id.* at 403.

Thus, it has been held that an insurer has no duty to inquire and inform an insured as to the terms of the policy. *See, e.g.*, *Whiteville Oil Co. v. Federated Mutual Insurance Co.*, 889 F. Supp. 241, 248 (E.D.N.C. 1995); *Bentley v. North Carolina Insurance Guaranty Ass'n*, 107 N.C. App. 1, 14, 418 S.E.2d 705, 712 (1992). "Insured parties have the burden of knowing the contents of their insurance policies." *Commonwealth Insurance Co. v. Stone Container Corp.*, 351 F.3d 774, 780 (7th Cir. 2003). An insurer "does not have the duty of reviewing the adequacy of an insured's coverage, even when it knows of facts that indicate that the coverage is inadequate." *Id.*; *Lazarra v. Howard A. Esser, Inc.*, 802 F.2d 260, 274 (7th Cir. 1986).[2]

Similarly, Massachusetts courts have held that "an insured cannot abandon all responsibility for ascertaining the terms of the coverage his broker obtained." *Campione*, 422 Mass. at 196; *Baldwin Crane & Equipment Corp. v. Riley & Riley Insurance Agency, Inc.*, 44 Mass. App. Ct. 29, 32, 687 N.E.2d 1267 (1997). Moreover, as against the insurer, the insured "is charged with his agent's knowledge of the terms and conditions of an insurance policy." *Simon v. National Union Fire Insurance Co.*, 57 Mass. App. Ct. 350, 354,

---

[2] *Cf. Oksa v. American Employer's Insurance Co.*, 218 F.2d 585 (2d Cir. 1955) (where insured sued insurer, under theories of breach of contract, negligence and fraud, for failing to increase limits of liability so as to conform with financial responsibility statute, it was "beyond comprehension" how the insured "could have hoped to succeed").

12

782 N.E.2d 1125 (2003); *Aguiar v. Generali Assicurazioni Insurance Co.*, 47 Mass. App. Ct. 687, 690, 715 N.E.2d 1046 (1999).

This Court has shown a reluctance to impose hitherto unrecognized duties on insurers. In *Vigilante v. Phoenix Mutual Life Insurance Co.*, 755 F. Supp. 25 (D. Mass. 1991), the Court rejected the argument of the aptly-named Mr. Vigilante that insurance companies have a duty to investigate and report criminal convictions of their insurance agents. Noting that the existence of a duty is a question of law, not fact, the Court observed that the plaintiff "has pointed to no Massachusetts regulation, statute, or common law requiring insurance companies to investigate their appointed agents or to report to anyone agent misdeeds, including criminal convictions." *Id.* at 28. Likewise, Beverly Port and Leslie Ray cannot point to any regulation, statute or common law requiring insurance companies to investigate the needs of the insured or to advise agents on what may appear, in twenty-twenty hindsight, to be a "gap in coverage." This Court should continue to be wary of imposing on an insurance company novel duties which have never heretofore been recognized.

To impose on insurers a duty of care in issuing policies would improperly confuse tort law with contract law. An insurance policy is a contract, generally subject to the principles of contract law, except as modified by statute. Under contract principles, a policy, even if unambiguous, may be modified to expand coverage, based on extrinsic circumstances such as the insurer's prior representation as to the scope of coverage. However, this Court has already rejected Beverly Port's argument (based on contract law) that due to the surrounding circumstances in this case Acadia should be liable for the Johnson claim

13

notwithstanding an unambiguous exclusion in the policy. Beverly Port is now making the self-same argument, only couched in terms of negligence.

If a contracting party were held to a duty of reasonable care in negotiating or drafting a contract, then virtually all of contract law would be eclipsed by the law of negligence. The benchmark of contract law – the intent of the parties, ordinarily as reflected in the contract language – would be replaced by the very different standard of "reasonableness under the circumstances." This is essentially what Beverly Port is urging – that the insurer's liability should be predicated not on the language of the contract, but rather on what a reasonably careful underwriter allegedly would have done.

There is no reason to muddy the waters of insurance law by interposing inappropriate tort concepts. *Cf. East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986) ("Contract law ... is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements"); *Morgan v. Financial Planning Advisors, Inc.* 701 F. Supp. 923, 927-28 (D. Mass. 1988) (barring claim for negligent provision of services when parties were in privity); *Arthur D. Little International, Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1202 (D. Mass. 1996) (barring professional malpractice claim against business consultants); *Prosser & Keeton on Torts* §92 at 657 (5th ed. 1984) (recovery of intangible economic losses is generally determined by contract rather than tort law). Moreover, to the extent courts in Massachusetts allow a negligence claim at all between contracting parties, it clearly is measured by the terms of the contract. *Arthur D. Little*, 928 F. Supp. at 1203; *see Abrams v. Factory Mutual Liability Insurance Co.*, 298 Mass. 141, 144, 10 N.E.2d 82 (1937). Contract

14

law should not be allowed to "drown in a sea of tort." *East River*, 476 U.S. at 866; *Drieblatt v. Osmose, Inc.*, 2001 U.S. Dist. LEXIS 2326 (D. Mass. 2001).

Hence, Acadia cannot be liable for negligence even if its boat dealer coverage was inadequate for Beverly Port's needs. If the scope of coverage is unsatisfactory, the insured's remedy is to read the policy and either reject it or seek modification. Beverly Port had seventeen months to do so before the Johnson claim arose. In retrospect Beverly Port may be dissatisfied with the contract it accepted, but that does not give it a negligence claim against Acadia.

By the same token, the relations between an insurance company and an insurance agent should be governed solely by contract. No court has recognized a legal duty that an insurance carrier owes to its agent apart from contract. Any duty owed by Acadia to Leslie Ray would have to be set forth in the Agency Agreement. Thus, in the *Art Goebel* case, *supra*, after concluding that the insurer had no duty to indemnify the agent under the agency agreement's indemnification clause, the court then held that the clause provided the agency's exclusive right to indemnity and thus precluded other remedies. *Art Goebel*, 567 N.W.2d at 516. Although the agency agreement did not expressly state that it was providing the agent's exclusive remedy or that common-law rights were precluded, the court stated: "By entering into an agency agreement containing a clear and unambiguous indemnity clause, West Bend and Cleary expressed their intent to have the clause provide Cleary's exclusive right to indemnity." *Id.* By specifying the circumstances under which the insurer's acts or omissions would result in an obligation to indemnify the agent, "West Bend and Cleary impliedly excluded all other scenarios ... ." *Id.* It follows that Leslie Ray's negligence claim, which is

15

really a claim for common-law indemnification, *see Thomas v. EDI Specialists, Inc.*, 437 Mass. 536, 538 n. 1, 773 N.E.2d 415 (2002), must fail.

### 4. **Even if Acadia had a duty of reasonable care, Plaintiffs cannot show a breach of that duty.**

It is undisputed that Acadia (prior to the Johnson claim) never had actual notice that Beverly Port permitted customers to operate its vessels and was never asked to provide coverage for that practice. The crux of Plaintiffs' claims is that Acadia nevertheless should have anticipated that a claim like Carlos Johnson's would arise and should have taken steps to protect Plaintiffs. However, the evidence shows that (a) as far as Acadia was aware, boat dealers did *not* permit customers to operate boats before purchase; (b) Acadia was not aware of *any* boat dealers that did allow such operation; (c) Acadia was not aware of any claims like the Johnson claim and had no reason to anticipate that such a claim would arise; (d) if asked to cover such a risk, Acadia would have declined; and (e) if Leslie Ray had been advised that Beverly Port needed such coverage, Leslie Ray would not have been able to obtain it, such coverage generally being unavailable. The only way Plaintiffs could contest any of the foregoing facts would be to have witnesses competent to testify about boat dealer and marine insurance industry norms and practices. However, pursuant to the Court's order of October 27, 2005, Plaintiffs are precluded from using expert testimony.

In Massachusetts, expert testimony is necessary for the proof of any technical matter beyond the scope of ordinary experience. *See Grant v. Lewis/Voyle, Inc.*, 408 Mass. 269, 276, 557 N.E.2d 1136 (1990); *see generally* P. Liacos, *Massachusetts Evidence* 103 (5th ed. 1981). If no expert testimony is presented and the issue is not susceptible of determination by the jury's "general knowledge of practical affairs," then the defendant is entitled to a

16

directed verdict. *Triangle Dress, Inc. v. Bay State Service, Inc.*, 356 Mass. 440, 442, 252 N.E.2d 889 (1969).

To cite just a few examples, courts in Massachusetts have held that expert testimony was necessary to show that a gas control device was defective, *Smith v. Robert Shaw Controls Co.*, CCH Prod. Liab. Rep. ¶16,779, 2003 U.S. Dist. LEXIS 23639 (D. Mass. 2003); to show a defect in electric fan, *Enrich v. Windmere Corp.*, 416 Mass. 83, 88-89, 616 N.E.2d 1081 (1993); to show a causal link between the Defendant's actions and the plaintiff's impotence, *Kaye v. Newhall*, 356 Mass. 300, 303 (1969); to show that a repairman caused an air conditioner malfunction, *Triangle Dress*, 356 Mass. at 442; to show the presence of a parasite in the public water supply in sufficient quantities to cause injury, *Matoon v. City of Pittsfield*, 56 Mass. App. Ct. 124, 140, 775 N.E.2d 770 (2002); to show the standard of care in legal malpractice actions, *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein*, 25 Mass. App. Ct. 107, 111, 515 N.E.2d 891 (1987); and to show that a fuel valve failed due to a defect, *Safety Insurance Co. v. Home Store, Inc.*, 18 Mass. L. Rep. 688 (2005).

By close analogy, it has been held that under Massachusetts law expert testimony was required in an action against an insurer for failure to settle a claim. *Palmi v. Metropolitan Property & Casualty Insurance Co.*, 12 Mass. L. Rep. 464 (2000). The claim was styled as one for breach of contract; but the court noted that a claim against an insurer for failure to settle is essentially a negligence claim. *Id.*, 2000 Mass. Super. LEXIS 534, *6. In finding that expert testimony was necessary, the court reasoned:

> What a reasonable insurer would or would not do is not something
> that the ordinary lay person knows. The analogous standard is that
> which tests professional negligence. *See, e.g.*, *Fishman v. Brooks*,
> 396 Mass. 643, 647, 487 N.E.2d 1377 (1986) (usually need expert
> to show attorney was negligent). Only where the professional
> negligence is so gross as to be obvious to a lay person may the case

17

be made without expert testimony.

*Id.* at 9.  Hence, to prove that an insurer acted negligently, a plaintiff "must present evidence from an expert on industry practice, or at the very least a professional to testify as to that practice, to explain to the jury what a reasonable insurer would do and to show that no reasonable insurer would have failed to settle the case within the policy limits by the time allotted in the demand letter." *Id.* at *11.  Although the court acknowledged that there could be cases where an insurer's negligence was "so gross as to be obvious to a lay person, and made it clear that such cases would be few and far between – the insurer would have to do something analogous to a dentist dropping a needle in to his patient's throat and telling the patient not to worry about it.  *Id.* at *10-12 & 4, citing *Lipman v. Lustig*, 346 Mass. 182, 184, 190 N.E.2d 675 (1963).  The court concluded:  "Because the jury did not have any evidence of the standard in the industry [the insurer's] motion for judgment notwithstanding the verdict is allowed."  *Id.* at *12.  *See also Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368, 389 (Ky. 2000) ("Jurors would have little reason to know what is evidence of bad faith in the adjustment of insurance claims" without expert testimony).

In the absence of expert testimony, Plaintiffs cannot hope to raise a factual issue as to what boat dealer underwriters customarily do, which boat dealer practices are customary, what boat dealer underwriters know or should know about boat dealers' practices, or what steps are reasonable in anticipating and guarding against a particular liability exposure, particularly if such an exposure was not specifically brought to the underwriter's attention.  Therefore, as a matter of law, Plaintiffs cannot meet their burden of proof.

**5.      Plaintiffs' claims are barred by *res judicata*.**

For the reasons set forth in Acadia's Memorandum of Law in support of its Motion to Dismiss, incorporated herein by reference, Plaintiffs' claims are barred by *res judicata*. Although the Court rejected that argument in the context of Acadia's Motion to Dismiss, the Court now has the benefit of the summary judgment record, and the nature of Plaintiffs' claims have been clarified. It is clear that claim preclusion applies, particularly to the claim of Beverly Port. Once Beverly Port asserted counterclaims in the earlier action, it was barred from developing new theories or claims against Acadia arising from the same set of circumstances. *See Baker v. Thomas*, 522 U.S. 222, 238, 118 S. Ct. 657, 666, 139 L. Ed. 2d 580 (1998); 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §4404 at 185 (2002).

Beverly Port's claims are barred by issue preclusion, as well as claim preclusion, because this Court has already rejected Beverly Port's theory that Acadia knew or should have known of the dealer's "customer test drive" practice and therefore should be deemed liable for indemnification on the Johnson claim. The only difference between Beverly Port's current claim and its earlier unsuccessful claim is that Beverly Port has substituted negligence concepts for principles of contract law. Where the issue is essentially the same and only the nomenclature has changed, issue preclusion (or collateral estoppel) plainly prevents re-litigation. "Efforts to recast an unsuccessful contract case into a second tort action commonly fail." *See* Wright, Miller & Cooper, *supra*, §4408 at 189-90.

As for Leslie Ray, this Court refused to grant leave for Leslie Ray to assert its present claims against Acadia in the DJ Action, due to the untimeliness of Leslie Ray's action. It makes little sense that Leslie Ray should be able to cure its untimeliness by commencing an

even later action in separate proceedings.  *See generally* 18A Wright, Miller & Cooper, *supra*, §4450 at 357-58.

## CONCLUSION

For the foregoing reasons, the Court should grant Acadia's Motion for Summary Judgment and enter judgment in favor of Acadia on all remaining claims.

Dated at Portland, Maine this 27th day of November, 2005.

ACADIA INSURANCE COMPANY

By its counsel:

/s/   Leonard W. Langer_____

/s/   Marshall J. Tinkle_____
(BBO# 565513)

TOMPKINS, CLOUGH, HIRSHON
   & LANGER, P.A.
Three Canal Plaza
P. O. Box 15060
Portland, ME  04112-5060
   (207) 874-6700
lwlanger@tchl.com

## CERTIFICATE OF SERVICE

I, Leonard W. Langer, hereby certify that on November 27, 2005, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send a notification of such filing(s) to the following:  William D. Chapman, Esq., Melick, Porter & Shea, LLP, 28 State Street, Boston, MA  02109 counsel for Plaintiffs Beverly Port Marina, Inc. and Leslie S. Ray Insurance Agency.

/s/   Leonard W. Langer_____